THE STATE OF OHIO, APPELLEE, *v.* SUSPIRATA ET AL., APPELLANTS.

THE STATE OF OHIO, APPELLEE, *v.* RICHARDSON ET AL., APPELLANTS.

THE STATE OF OHIO, APPELLEE, *v.* LONARDO ET AL., APPELLANTS.

(Nos. 19010, 19011 and 19012—Decided January 4, 1943.)

Mr. *Frank T. Cullitan,* prosecuting attorney, and Mr. *Neil McGill,* for appellee.

Mr. *Howell Leuck,* Mr. *J. Frank Azzarello,* Mr. *Selmo Glenn,* Mr. *Harry Glick,* Mr. *M. A. Picciano,* Mr. *Leonard Danaceau* and Mr. *Parker Fulton,* for appellants.

MONTGOMERY, J. The appellants in these three several actions, together with others, were indicted in the Court of Common Pleas of Cuyahoga county for a violation of Section 13384, General Code, which is the section governing so-called blackmailing or extortion. During the progress of the trials some of those indicted were dismissed by the court, and one at least was found not guilty. All of the appellants were convicted under the several indictments which had been found against them, as were other defendants who have not appealed. Judgments having been entered upon the verdicts and sentences imposed, these several appeals were perfected to this court. The three cases were argued and submitted together, and we determine them together, because the propositions are essentially the same.

It is contended by several of the appellants that as to them there should have been directed verdicts on

the ground of failure to connect them with the things charged. All of the appellants assigned generally, as ground of error, the claim that the several verdicts against them were manifestly against the weight of the evidence.

An examination of the voluminous records presented in these cases convinces us that there is no merit in either of these contentions. There was ample, credible evidence sufficient to justify the conviction of each and every one of these appellants who was convicted. The verdicts of the jury, and the judgments of the trial court thereon were not manifestly against the weight of the evidence.

We proceed, therefore, to a discussion of the several technical errors assigned which deserve some consideration. The average number of assignments of error as to each of these appellants in each case is twenty. As we have from time to time taken occasion to observe, under such circumstances, it is our experience that the greater the number of assignments of error in a given case, the less likely is there to be merit in any of them, and that observation is rather pertinent in the instant cases.

We have given consideration to all the assigned errors and, excepting those which we will hereinafter discuss, we find no merit in them, and nothing worthy of comment.

We have hereinbefore observed that others were indicted with these appellants and were dismissed during the progress of the trial. It is complained that the trial court caused prejudice to those held by announcing to the jury that the others had been discharged. The record shows that the argument with reference to those discharged defendants was not made in the presence of the jury. The trial court did state to the jury that they had been dismissed. He could not have done otherwise. With others accused and brought to trial, and the claims against them not being pressed,

the jury was entitled to know what had happened and why the cases against those individuals were withdrawn from the jury's consideration. Otherwise, the jury could not have acted intelligently.

Nearly all of the appellants complain most vigorously of alleged misconduct on the part of the prosecuting attorney in his statements to the several juries in opening the cases and in his final argument to them. He called attention to the gigantic character of the conspiracy in which the several defendants were engaged, a conspiracy involving racketeering, blackmailing, extortion, and called attention to the fact that murders had been committed, and that other people had been threatened with the same fate which had been administered to the murdered men.

From an examination of these records we are convinced that this did not constitute misconduct, and that the prosecuting attorney was justified in the references which he made. For from time to time throughout these long records appear instances of threats by some of these defendants, or by the ringleader in their presence, in which recalcitrant individuals were threatened that, unless they "came across," they would meet the fate of certain individuals, which latter individuals the record shows had been murdered. The statements of the prosecutor were justified under this evidence. Of course, these threats were not made by all of the defendants. Various and sundry of them did make the threats. Others were present when the leader of the gang made them. We find ample proof of a conspiracy involving all of these appellants, and, consequently, these threats were properly introduced in evidence against them, and, in view of the evidence of the threats, the conduct of the prosecutor is not to be criticized.

Strenuous objection is raised to the charges of the court upon the question of conspiracy and upon the

status of an aider and abetter. We have given careful attention to these charges. We see nothing in them to criticize. In fact, the court properly stated the law. And again it is urged that the trial court committed error in his instructions to the jury with reference to similar offenses, and that he did not in each instance, when a proffer was made of evidence as to a similar offense, charge the jury in connection with it.

His charge generally was even more favorable to the appellants than they were entitled to have. He in effect charged that this particular crime, in the action then being tried, must be proved beyond a reasonable doubt before evidence of similar offenses became competent. This was going beyond the requirements.

In each of these trials, when the first proffer of evidence of similar offense was made, he charged the jury the purpose for which it was being admitted, and then during the trial he stated that that instruction applied to evidence of all similar offenses. Surely, the jury must have understood the proposition, and it would have been vain and superfluous to have required of him that he instruct the jury in detail each time the question was raised, and it was raised in innumerable instances.

Of the assignments of error in the several cases which really deserve consideration there remains but one, and it is the one which has caused us the most concern, and to which we direct attention in some detail, and that is that the trial court did not upon their application discharge the several defendants when they were not brought to trial within the time prescribed by statute for trial after indictment.

Section 13447-2, General Code, is in the following language:

"A person shall not be held by recognizance to answer an indictment or information without trial for a

period of more than three terms, not including a term at which a recognizance was first taken thereon, if taken in term time. He shall be discharged unless a continuance is had on his motion, or the delay is caused by his act, or there is not time to try him at such third term, in which case he shall be brought to trial at the next term or be discharged."

These indictments were returned April 26, 1939. The various defendants were apprehended at various times, most of them within a few days, some in a few weeks, one in fourteen months, one in twenty-six months, and one never was apprehended. The trials were had in the summer of 1942.

In overruling the several motions to discharge the accused for failure to bring them to trial, the lower court rendered an able opinion. He directed attention to the Ohio cases construing these statutes which have to do with "acquittal without trial." *Ex parte Mc-Gehan,* 22 Ohio St., 442; *Erwin* v. *State,* 29 Ohio St., 186, 23 Am. Rep., 733; *Johnson* v. *State,* 42 Ohio St., 207.

The Supreme Court has never construed these statutes strictly. Attention is called specifically to the third branch of the syllabus in the *McGehan case,* which is:

"To entitle a prisoner to such discharge, on the ground that he has not been brought to trial during the time limited by sections 161 or 162, he must make application to the court therefor, and if when he makes such application, whether during the time so limited, or at a subsequent term of the court, the state is ready to proceed with the trial, or makes the showing specified in section 163 for a continuance, he will not be entitled to be discharged."

And in the instant cases, not only was the state ready to proceed with the trial when the application for dis-

charge was made, but the cases had been assigned for trial and no application for discharge had been made until after such assignments.

Apparently the most elaborate discussion of the general proposition and of the construction throughout the country placed on similar statutes is to be found in 129 A. L. R., in the annotations, pages 572 to 596; and of especial value in considering the instant cases are the discussions to be found on pages 577, 580, 581 and 582, wherein the position is taken that a defendant cannot have the advantage of such a statute, if the delay in trial has been caused by his filing dilatory pleas, by his condition or conduct, by the fact that he had procured the absence of witnesses, or if he or his counsel have consented to or acquiesced in the continuances.

In 14 American Jurisprudence, 864, Section 138, we note the following:

"Silence on his part cannot be construed as a demand for trial. If he does not make a demand for trial or resist a continuance of the case, or if he consents to continuances, goes to trial without objecting that the time limit has passed, or fails to make some kind of an effort to secure a speedy trial, he will not be in a position to demand a discharge because of delay in prosecution."

*Hernandez* v. *State*, 40 Ariz., 200, 11 P. (2d), 356, is an interesting case wherein this kind of a situation is discussed at some length.

On page 357 of the opinion we note this comment:

"The constitutional and statutory provisions involved herein were not meant to shield the guilty man who sits silently by and allows the officers of the state to assume that he acquiesces in delaying a trial, and then, when it is too late for the mistake to be remedied, claims his rights. They were meant rather to protect

the man who seasonably makes it known to the proper officers that he claims an early trial, so that his innocence may be established.''

Measured by all the authorities, what must be our conclusion in the cases now before us?

As stated before, there was difficulty in apprehending some of the accused, and with such a conspiracy with such ramifications, it was rather vital to the state to have them all apprehended. The ringleader, chief or director of what, under the evidence, is justifiably described as a gang or mob, never was caught. He is referred to constantly through these records as Angelo Scerria, known as ''Angelo Piccolo,'' ''Little Angelo,'' ''Little Angel.'' Some of the other indicted persons, not taken into custody promptly, were concealing him, or at least conniving at and assisting him in escaping justice.

None of these men ever demanded trial, some of them—conspirators still—were helping to thwart the state in its procedure. All stood by and acquiesced at least in the continuances. It is not unfair to suggest that they would have acquiesced gladly in continuances forever.

We cannot find that they were prejudiced. We can come to no conclusion other than that the several convictions were justified under the records.

As to all of the appellants the judgments are affirmed.

*Judgments affirmed.*

LEMERT, P. J., and SHERICK, J., concur.